State ex rel. Marie L. Beebe vs. the Judge of the Sixth District Court.

## No. 6336.

STATE EX REL. MARIE L. BEEBE VS. THE JUDGE OF THE SIXTH DISTRICT COURT, PARISH OF ORLEANS.

| 28 | 905 |
| 44 | 1084 |
| 28 | 905 |
| 116 | 1084 |

In this case the question is simply whether or not a mandamus will lie to compel a judge to issue an injunction. The act required to be performed is simply a judicial act, and a mandamus will never be issued to .control the discretion of an officer.

APPLICATION for a writ of mandamus and prohibition against *Saucier*, judge of the Sixth District Court, parish of Orleans. *J. Q. A. Fellows* and *R. Shackelford*, for relator. Respondent, *in propriâ personâ*.

HOWELL, J.   The plaintiff presented a petition and affidavit to the judge of the Sixth District Court for the parish of Orleans, setting forth various grounds for an injunction to restrain the sale of her property in executory proceedings at the suit of one J. P. Guinault. The judge, instead of granting or refusing the writ, authorized a rule on said Guinault to show cause why the injunction should not be granted as prayed for, and, upon hearing the said rule, refused the injunction. Whereupon plaintiff applied to this court for and obtained writs of mandamus and prohibition to compel the district judge to grant the injunction on her petition and stay all proceedings under the writ of seizure and sale pending this application. To these writs the judge answers that on a "rule *nisi*," issued in the case of Marie L. Beebe vs. J. P. Guinault, under rules Nos. 21 and 22 of the district courts of the city, it was proved by counter affidavits and documentary evidence that the allegations of the petition for the injunction had no foundation in fact; that the affidavit of the petitioner was made by her from information without any personal knowledge of the facts sworn to, and, no bond being filed or tendered as required by law, the court, in its legal discretion, refused the injunction.

The plaintiff, in her application to this court, alleges that on the trial of the rule in the lower court she was not permitted to introduce rebutting evidence, and reiterates the grounds for an injunction, one of which, she contends, entitles her to an injunction without bond, and she insists that, upon the showing made to the district judge, she was entitled of right to the writ, and that there is no law authorizing the proceeding called a "rule *nisi*."

Article 738, C. P., relied on by the plaintiff, enacts that "the debtor against whom this order of seizure and sale shall have been rendered *may* obtain an injunction to suspend the sale, if before the time of sale he files, in the court issuing the order, his opposition in writing, alleging some of the reasons contained in the following article, and of which he swears to the truth."

The reason given in this instance is alleged fraud.

64

State ex rel. Marie L. Beebe vs. the Judge of the Sixth District Court.

It has been often held that the writ of mandamus will issue only to compel the performance of a duty imposed by law, and in which no discretion is to be exercised. The issuance of an injunction is not such a duty. The judge is to exercise a sound legal discretion, subject, of course, to revision by this court in cases properly brought up. A mandamus, therefore, will not issue to compel an inferior judge to grant an injunction. This court is not vested with a supervisory control over all inferior courts, so as to compel them to give remedies and do acts about which they have discretion. They may err in judgment, and even willfully, where such error can not be corrected by this tribunal. But the presumption is that the judge will do his duty in every case, and his failure to do so in some cases makes him responsible to another tribunal than this.

The plaintiff may be entitled to an appeal from the decision on the rule *nisi*, but we are not asked for a mandamus to compel an appeal. The questions as to the legality of the proceeding by rule, the refusal to hear rebutting evidence, and the validity of rules twenty-one and twenty-two of the district courts are not properly before us in this proceeding. Ours is appellate jurisdiction only, and to be exercised in the mode prescribed by law.

It is therefore ordered that the application for the writs of mandamus and prohibition herein be dismissed at plaintiff's costs.

---

LUDELING, C. J., *concurring.* In this case the question is simply whether or not a mandamus will lie to compel a judge to issue an injunction. The act required to be performed is clearly a *judicial* act, and a mandamus will never be issued to control the discretion of an officer. I concur in the opinion of the court.

---

WYLY, J., *concurring.* In this case the question is, shall a mandamus issue to compel the judge of the Sixth District Court to grant an injunction in a case where, after hearing the parties on a rule *nisi*, he rejected the application for an injunction. In other words, shall this court, in the exercise of its appellate jurisdiction, compel the judge *a quo* to revise and reverse an interlocutory judgment rendered by him rejecting the application for the conservatory remedy of an injunction *pendente lite.*

A bare statement of the question, it seems to me, will suggest an affirmative answer, requiring no argument to support it. The decree, on the trial of the rule *nisi*, was certainly an interlocutory judgment settling, in the court *a qua*, the issue whether, *pendente lite*, plaintiff was, under

the evidence adduced, entitled to the conservatory order of injunction. When the judge decided the rule he did not discharge a mere ministerial duty, a duty involving no discretion, and to compel the performance of which a mandamus would lie; but he performed a judicial act (as this court has frequently decided) which could be revised on appeal by this court. All the essential elements of a judgment were involved in the decision of the rule. And if this court should issue the mandamus requiring the judge *a quo* to review the case and reverse his decision, it would transcend its jurisdiction and do an act unwarranted by law. This court, in the exercise of its appellate power, may revise and, if proper, reverse a judgment, after being seized of jurisdiction by an appeal. But, without obtaining jurisdiction by an appeal, this court has no power to review or reverse a judgment, however erroneous, and however great the inconvenience or hardship of the case. The power of this court is not measured by the hardship of cases or the inconvenience or losses that may result to the litigants for want of a more speedy remedy than the law has provided to protect them from injury by the erroneous judgments of inferior tribunals.

We must look to the constitution and the laws in order to determine the jurisdiction and powers of this court, and to decide whether plaintiff is entitled to the relief which she asks in this application for mandamus. By the constitution and the laws this court may revise a judgment after jurisdiction has attached by an appeal; it may reverse a judgment, but it can not command an inferior court to review its own judgment and to decide it differently and at total variance with the honest conviction of the presiding judge. To compel a judge to decide a case contrary to his honest conviction would be not only arbitrary and tyrannical, but it would, in effect, destroy him as a judge, and degrade the court over which he presides into a petty office for the performance of ministerial duties. I deny the authority of this court to dictate a judgment or an interlocutory decree for the judge below to render in a case of which he is seized of jurisdiction. No issue, interlocutory or pertaining to the merits, can be examined by this court until the case is removed by appeal from the court below to this court. The writs of mandamus and prohibition are only used by this court in aid of its appellate jurisdiction; that is, to assist in establishing and maintaining appellate jurisdiction where opposition has been set up.

From the beginning of the jurisprudence of this State, this court has never permitted a judgment (interlocutory or final) to be revised on the trial of an application to it for a mandamus. And the law is clear that a mandamus will only lie to compel the performance of some ministerial duty. By the constitution, the judge can only perform judicial duties. The interlocutory judgment of which plaintiff complains can only be

revised by an appeal. The mandamus applied for, I think, should be denied.

. I therefore concur in the decree in this case.

MORGAN, J., *dissenting.* James P. Guinault obtained an order of seizure and sale against the property of Marie L. Beebe. The property was seized and was ordered to be sold. Marie L. Beebe presented a petition to the judge of the Sixth District Court of the parish of Orleans (the court from which the order of seizure and sale issued) alleging that, at the time the note upon which the order of sale issued was executed, she was under age; that it was not given for her benefit, or for the use of her property, all of which she alleges was known to Guinault; that she was induced to sign the note by his false and fraudulent representations, and that the consideration for which it was given had entirely failed. She prayed for an injunction against Guinault and the sheriff, staying the sale. The district judge, instead of acting at once upon the application, granting or refusing it, ordered Guinault to show cause why the injunction should not issue. Guinault showed cause, and the injunction was refused. The relator now applies to this court for a mandamus compelling the district judge to issue the injunction as prayed for.

No appeal is asked for from the refusal of the judge, on the trial of the rule *nisi*, to grant the injunction, nor do I think that such a proceeding would have been the relator's remedy. It has, I know, been held that an appeal will lie from what is termed a judgment on a rule *nisi* where no objection is made to the proceeding. Therefore, if the proceeding by rule be acquiesced in, the judgment thereon will still be subject to our revision. Ordering a party who asks for an injunction to take a rule upon the party against whom the injunction is asked to show cause why it should not issue, is a rule of court, or practice, sometimes resorted to by the judges of the district courts. It is, I think, a good rule; but it is, I apprehend, simply used as a precaution. The action of the district judge in such a proceeding is no more and no less a judgment than if he had refused, or granted the injunction without it. If he refuses to grant the injunction asked of him, without a rule having been previously taken, no appeal will lie, according to the decisions heretofore rendered. Therefore, if a rule *is* taken without objection, and the injunction is refused, *then* an appeal will lie. After all, what is it that an appeal is asked from in such a case? Evidently, it seems to me, the refusal to grant the injunction; whether the refusal is given by the district judge without a rule or with a rule, is a matter of indifference to the party whose rights, it may be, have been denied him. The rule, in the end, is only a preliminary proceeding, and could not result in a decision of the controversy between the parties, even if the decision of the judge thereon was passed

NEW ORLEANS, DECEMBER, 1876. 909

State ex rel. Marie L. Beebe vs. the Judge of the Sixth District Court,

upon here. For instance, if the judge orders a rule to be taken by A against B to show cause why an injunction should not issue against him, and upon hearing the rule the judge should refuse the injunction, and, upon appeal, we should decide that A was entitled to the writ, what would be the result? Would we issue it? No, for we have no original jurisdiction in such a case. Would our saying that A was entitled to the injunction be, of itself, an injunction? Evidently not. The only result of our judgment would be that the district judge would issue the injunction, and thereupon the litigation between the parties upon the subject of the injunction would begin, which litigation would only be ended by us on appeal from a final judgment therein rendered.

Whether a rule is to be taken or not, is within the exclusive direction of the judge. He may, and I believe usually does, order it of his own motion, as appears to have been done in this case. He may refuse it, if asked for by a litigant. If he orders a rule to be taken, and he refuses the injunction, his action is subject to revision. If he refuses the injunction without a rule, his action can not be revised. Thus the right to a revision of his proceedings is governed by the action, and the arbitrary action, of the judge. I think this right is fixed by the constitution, and is regulated by the law, and that it exists independent of and despite of the district judge, and I do not think that any thing he can do can abridge, much less, destroy it.

But, to my mind, the serious question in the case is, whether this court can, by mandamus, compel a district judge to issue an injunction. A majority of the court think that it can not. I think that it can.

The objection to our right to issue the mandamus, as I understand it, is that we have only appellate jurisdiction; that this jurisdiction relates to some judgment pronounced or act done by a district judge, and that in the case before us the district judge has rendered no judgment and has done no act. I admit that we have only appellate jurisdiction. I do not contend that we have the power to issue a mandamus to a judge of inferior jurisdiction in any case over which we would not have appellate jurisdiction. I do not contend that we have the right to issue an injunction *in limine litis*. But I do contend that it is in the power of this court to compel a district judge to do his duty, and his whole duty, in all cases where the constitution intrusts us with a revision of his judicial proceedings. It is not denied that the matter in controversy between the parties to this suit comes within our appellate jurisdiction.

Now, a mandamus is an order issued in the name of the State by a tribunal of competent jurisdiction and addressed to an individual or corporation, or court of inferior jurisdiction, directing it to perform some certain act belonging to the place, duty, or quality with which it is clothed. C. P. 829. The object of the order is to prevent a *denial of*

*justice*, or the consequence of defective police, and it should, therefore, be issued in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever. C. P. 830. It may be directed more particularly to judges of inferior courts, commanding them to render justice and to perform the other duties of their office conformably to law. C. P. 837.

In this case, the order (or writ of mandamus) issues not only when the judges of inferior courts are guilty of a denial of justice, unreasonable delay in pronouncing judgment in causes before them, but also if they refuse or neglect to perform any of the duties required of them by law, or which may enable the superior courts to exercise their appellate jurisdiction. C. P. 838.

Suppose a party is attempting to build a wall around a square of which the public has the use, and, injunction being asked for against him, the district judge refuses the writ, would the public be without a remedy? Suppose A claims title as against B of a piece of real estate, and B is attempting to erect a building thereon which A thinks will be injurious to his interests, and he asks the judge of his district for an injunction against him prohibiting him from erecting the building, and the judge refused A, would A be without a remedy? It would seem so, if the opinion of the majority be correct. And yet these are the remedies given by law, for the Code of Practice says expressly that the injunction must be granted "when the defendant is in the act of building or constructing some work tending to obstruct a place of which the public has the use, and when the defendant has commenced some building or some other works on a real estate, the ownership or possession of which is contested by the plaintiff, or pretends that such building or works would be injurious to his interest." C. P. 298. The same Code says the same thing as regards the enjoining of an execution when payment is alleged to have been made after judgment rendered, or when compensation is pleaded against the judgment, or where the sheriff is proceeding on the execution contrary to some provision of the law. C. P. 258, No. 10.

An injunction, like an attachment, a sequestration, or a provisional seizure, is a conservatory remedy which a party may obtain in order to give effect to the suit which he has brought or intends to bring. C. P. 208. And the Code of Practice declares when and in what cases it may be applied for. When a litigant asks for one of them, and his demand is sanctioned by the law, in my opinion, it is the duty of the judge to grant it.

If an attachment is asked for by me against the property of my debtor, who is a non-resident, and it is refused, I can not give the court jurisdiction, and can not, therefore, proceed against my debtor. Yet the law

says that I am entitled to an attachment when my debtor resides out of the State and has property within its jurisdiction. If the judge refuses to cause movable property which I have sued for, and which is in the possession of the party sued, to be sequestered when I have made an affidavit that I feared he was about to remove the same beyond the jurisdiction of the court, pending the action, and tendered the bond required by law, any judgment which I may obtain declaring me to be the owner thereof would be worthless, if, pending the suit, the property was made way with. Yet the Code of Practice says that when one sues for the possession of movable property, and fears that the party having possession may send the property in dispute out of the jurisdiction of the court during the pendency of the suit, a sequestration may be ordered. C. P. 275.

If the judge refuses me a writ of provisional seizure, directed against the furniture of my tenant, who owes me rent, my security is taken away from me. Yet the Code of Practice gives to the lessor the right to obtain a provisional seizure of property used in the house or attached to the real estate which is leased. C. P. 285.

If a man obtains judgment against me, which I have paid, notwithstanding which he issues execution against my property, and advertises it for sale, if the judge refuses me an injunction prohibiting the sale, my property will be sold to satisfy a judgment which I have already paid. Yet, under article 296, No. 10, of the Code of Practice, I would be entitled to an injunction.

It is within our power to issue a mandamus to courts of inferior jurisdiction, commanding them to render justice, to perform the duties of their office, to prevent a denial of justice on their part, and to prevent their refusal to perform the duties of their office in cases where we have the right to exercise our appellate jurisdiction. In the instances cited the parties asking for relief would have been within the letter of the law, and yet, if the district judge violated his duty and refused compliance with the positive commands of the Code, no remedy is within the reach of those whose rights were invaded, if the opinion of the majority prevails. Take the particular case before us. Executory process issued against the relator's property. The property is seized and offered for sale by the sheriff. She alleges that the note, which the confession of judgment was given to secure, was given without consideration; that it was fraudulently obtained; that she was not of legal age when she signed it, etc. If what she alleges and swears to, be true, an obligation is sought to be enforced against her which the courts would repudiate. Article 749 of the Code of Practice says that the defendant may obtain an injunction on alleging, under oath, any of the causes which prevent the

sale of property mortgaged or otherwise bound by virtue of an act importing a confession of judgment.

In the case of the State vs. Bermudez, 14 La. 479, the probate judge was compelled, by mandamus, to appoint an under-tutor to a minor. The court said: "It appears to us the principal and material inquiry is, whether the judge of probates of the parish of Orleans is bound to appoint an under-tutor to minors whose domicile is in his parish. That is the first step to be taken for. (in ?) the proceedings in relation to the security to be given by the tutors, and must be carried on contradictorily with the under-tutor." The decree was that the judge of the court of probates proceed to take cognizance of the plaintiff's petition, and to make an appointment of under-tutor. The general powers of this court with reference to the supervisory control which it has over courts of inferior jurisdiction is treated of in that decision by Mr. Justice Bullard with an ability which I can not hope to equal, and which only the already extended limits of this opinion prevents me from relieving it of some of its tediousness by giving it at large. I rely upon it, however, to sustain, in principle, the position which I have here endeavored to maintain.

In the case of the State vs. Lewis, 7 M. 457, where an appeal was asked for from the refusal of the district judge to grant an injunction, and refused, this court, by mandamus, compelled the lower judge to grant the appeal. This case was overruled in the case of State ex rel. H. Newgass vs. Judge of the Superior District Court, Opinion Book No. 44, folio 635. According to our jurisprudence, no appeal will lie from the refusal of a district judge to grant an injunction, and no mandamus will lie to compel him to grant one. Therefore, in such cases, the litigant is completely at the mercy of the district judge. I can not reconcile it to myself that such a state of things exists.

I think that the sworn allegations contained in the relator's petition made it the duty of the district judge to issue the injunction; that the matter comes within our appellate jurisdiction, and the text of the law which I have cited convinces me that where a district judge refuses an injunction to a party who is, under the law, entitled to it, it is not only within our power, but it is our duty, to compel him, by mandamus, to obey the behests of the law. The refusal of a judge to do a thing which the law says he shall do is as great a violation of the law as if he did a thing which the law says he shall not do. He may ruin a party by non-action as well as by action. It was to protect the citizen from the possible errors of judges of inferior jurisdiction that appeals from their judgments are allowed to a higher tribunal. It was to protect the citizen in his rights that to courts of a higher jurisdiction was given the power to compel judges of an inferior jurisdiction, by mandamus, to perform the duties which are devolved upon them by law, and to grant to litigants

the relief which a compliance with the terms of the law entitles them to.

In my opinion, the facts, as alleged and sworn to in the relator's petition to the district judge, entitle her to an injunction, and, the district judge having refused it, I think the mandamus should issue as prayed for.

LEONARD, J., *dissenting.* I concur in the conclusions of Mr. Justice Morgan, but as the question before the court is one, in my opinion, of the most vital importance, I prefer to give my own reasons why I am not able to concur in the views of the majority of the court. I desire, however, not to express any opinion concerning the proper practice of the district courts when application is made to them for relief, except so far as this question arises in the case now before us.

If an ordinary action is instituted against me, and I see proper to file my answer within the legal delays, the court can not order a rule to be taken upon me to show cause why my answer should be stricken out as frivolous and untrue, and afterward decide, upon the trial of this rule, after hearing *ex parte* affidavits, that the allegations of my answer are, in fact, false, that judgment should be rendered against me, and that execution should issue forthwith. I am entitled in such a case to a trial upon the merits, and to the benefit of the ordinary rules of evidence. In case the plaintiff's claim against me arises from an act importing a confession of judgment, he may proceed against me "by causing the property subject to his privilege or mortgage to be seized and sold on a simple petition, and without a previous citation." Code of Practice, art. 734. But the creditor can not proceed as though he had obtained judgment and were entitled to a writ of *fieri facias.* In obtaining the order he must "give three days notice to the debtor, counting from that on which the notice is given, if he resides on the spot, adding a day for every twenty miles between the place of his residence and the residence of the judge to whom the petition has been presented." Code of Practice, art. 735. "The delay accorded to the debtor before the issuing of the writ is to enable the party to apply to the judge for an appeal, or to adopt some other mode of redress in case the proceedings are irregular and unlawful." Nash vs. Johnson, 9 R. 8.

In certain cases when an order of seizure and sale has been improperly granted the debtor's remedy is by appeal, in other cases his remedy is by injunction. But, whether the proper remedy be by appeal or by injunction, he has the constitutional right to have his case passed upon by the Supreme Court of the State whenever the matter in controversy exceeds five hundred dollars. If I am sued on a promissory note, I can arrest the course of the proceedings against me by answering that I have paid the debt. If I am proceeded against upon an act importing a

confession of judgment, I can arrest the proceedings by *swearing* that I have paid the debt.

"The debtor against whom an order of seizure and sale has been rendered," says the Code of Practice, art. 738, "may obtain an injunction to suspend the sale, if before the time of sale he files in the court his opposition in writing, alleging some of the reasons contained in the following article, of which he shall swear to the truth." "The debtor may arrest the sale of the thing," continues the Code, "by alleging some of the following reasons:

First—"That he has paid the debt for which he is sued," etc.  Art. 741. "The plaintiff against whom the injunction has been obtained, may compel the defendant to prove in a summary manner before the judge the truth of the facts alleged in his opposition."

It will be observed that the executory process is regarded as a suit against the debtor.  " The debt for which he *is sued*," is the language of the Code.  It will also be observed that the debtor who files his opposition in such a case, and thus obtains an injunction, is regarded as a defendant, and not as a plaintiff.  Upon what principle, then, can it be urged that the defendant in the suit is not entitled to a trial, upon complying with the requirements of the law ?  The Code of Practice declares in express terms that he can arrest the sale of the thing by alleging, under oath, that he has paid the debt.  Can the judge of a district court abrogate the law by refusing to permit the sale to be arrested when the defendant files the opposition required by the Code ?  If he can deny the defendant a trial on the merits in a suit of this character, he can equally deny this right in any other case whenever his caprice or prejudice may deem the defense ill-founded.  He may decide as he sees fit, but he can only decide after a trial.  His duties in a case of executory process are clearly laid down in the Code.  They are that "he shall pronounce summarily on the merits of the opposition."  Art. 740.  But this the judge has not done in the present instance.  He has, on the contrary, refused to permit the opposition to be made, and has, in effect, stricken it from the record.  The effect of his course is that the debtor is denied the very privilege which the law guarantees him.  The judge does not proceed according to law, as he is bound to do, but according to his own notions of what is equitable and just in the premises.  There is no pretense that the opposition is insufficient in law, but only that it is untrue in fact.  In other words, my plea of payment may be entirely formal, and filed at the proper time, but, inasmuch as the judge is satisfied that it is ill-founded, I am not to be allowed a trial upon it, nor is it to be permitted to delay for a moment the judgment by default which it sought to avert.  So in a case of executory process, my oath that I have paid the debt is formal and filed in time, but the judge satisfies himself by

State ex rel. Marie L. Beebe vs. the Judge of the Sixth District Court.

means of *ex parte* affidavits that the defense is ill-founded, and here, too, refuses me a trial upon the merits, upon which the law commands him to pronounce. Is there any difference in principle between the two cases? I think not. My rights are as much disregarded and trampled under foot in the one case as in the other. I assume, therefore, that the action of the judge *a quo* was arbitrary, and in direct defiance of the law; and the question arises whether this court can grant any relief in such a case.

It is admitted that the matter in dispute exceeds five hundred dollars, and that it is, therefore, within our appellate jurisdiction. All that I have said with regard to the right of a party to a trial in the first instance applies with equal force to an appeal whenever the parties are entitled to this privilege. In such a case I would have the right to carry my plea of payment, whether in the case of an ordinary suit or in case of executory process, before the Supreme Court of the State. and, by tendering the proper bond, to prevent the execution of any judgment against me until my rights in the premises had been finally passed upon by the tribunal of last resort. And any act of the judge *a quo* which deprives me of this privilege in a case in which I am entitled to it is as much an infringement of my rights as it would be to deprive me of any trial whatever. The application to this court in the present instance is for a writ of *mandamus* to compel the judge *a quo* to arrest the sale of the thing; in other words, to compel him to perform that which it is not denied is his manifest duty under the law. "This order," says the Code of Practice, art. 837, "may be directed more particularly to judges of inferior courts, commanding them to render justice and to perform the other duties of their office conformably to law." "In this case," continues the Code, art. 838, "the order issues not only when the judges of inferior courts are guilty of a denial of justice, unreasonable delay in pronouncing judgment on causes before them, but also if they refuse or neglect to perform any of the duties required of them by law, or which may enable the superior courts to exercise their appellate jurisdiction." In this case it is, in effect, admitted that the judge *a quo* has neglected to perform the duty required of him by law, which was to arrest the sale of the thing upon the filing of the proper opposition, and afterward to decide summarily upon the merits of the controversy. Would the writ in this instance enable us to exercise our appellate jurisdiction? Not only would it have this effect, but without the exercise of the writ we are absolutely and irremediably deprived of our jurisdiction. The theory of the law is that no order of seizure and sale for an amount exceeding five hundred dollars shall be carried into effect whenever the required opposition is filed, until the Supreme Court has finally passed upon the suit; provided, of course, that the defendant sees fit to avail himself of

a suspensive appeal in case he is cast in the court below.   But in this case the property is about to be sold without any opportunity being afforded to the defendant to appeal to this court for relief.   There can be no appeal from a refusal to grant an injunction, as was decided by this court in the case of State ex rel. Newgass vs. Judge of the Superior District Court, 27 An. 672.   Besides, even if an appeal lay, it would not in such a case prevent the sale.   If the sale were once arrested, a suspensive appeal from the judgment dissolving the injunction would keep matters *in statu quo*.   But there could no more be a suspensive appeal from a refusal to grant an injunction than there could be a suspensive appeal on the part of a plaintiff from a judgment of nonsuit.   The doctrine advanced by the judge *a quo*, if sustained, leads simply to this:   I own, for example, a piece of real estate valued at one hundred thousand dollars.   A person styling himself a creditor sues out an order of seizure and sale upon an act importing a confession of judgment for fifty thousand dollars.   I file my opposition, under oath, alleging that the act containing the privilege is forged.   The judge, as in this instance, refuses to permit the sale of the property to be arrested.   I apply to the Supreme Court in vain for the interposition of its appellate powers, and my property is finally sacrificed, because a single judge has decided my oath to be untrue, and that, too, without ever having granted me a trial on the merits.

The purchaser at the sale would undoubtedly acquire a good title, because he would purchase at a sale ordered by a court of competent jurisdiction, in a case, too, in which this court had decided that the sale could not be arrested.   I would thus be deprived of my property by the arbitrary refusal of the courts to grant me a trial in a case in which this privilege was expressly guaranteed to me by the constitution.   I should be slow to believe that the law of Louisiana was in such a condition as this.   If it is, my homestead may be sold at any moment by the judge of my domicile without trial and without remedy.   It is a principle of law which I fully recognize that the judges of the inferior courts ought not to be interfered with in the exercise of those powers which the law has confided to them; but it is also a principle of law, and one of graver import, that those tribunals can not exercise their powers in such a manner as to deprive this court of its appellate jurisdiction.   When two principles come, to some extent, in conflict, they must, if possible, be reconciled; if this can not be done, one of them must yield.   I see no difficulty in reconciling the principles that are presented in this case; if I did, I should maintain the principle of the right of appeal above all others.