McBRIDE, Judge.
This appeal, transferred to this court by the Supreme Court, 221 La. 985, 60 So.2d 895, is from a judgment of the Twenty-fifth Judicial District Court for the Parish of St. Bernard maintaining exceptions of no cause or right of action, misjoinder of action, and mistaken remedy, to a suit for mandamus brought to compel the assessment and collection of certain drainage taxes, for the payment of $244,000 face amount of defaulted drainage bonds, issued by the Bayou Terre-aux-Boeufs Drainage District of St. Bernard Parish.
The three relators-appellants constitute a committee to represent the holders of the $244,000 of bonds, who had deposited them with a New Orleans bank as “depositary,” and the committee, which was vested with legal title to the bonds deposited, and interest coupons attached thereto, was ■ empowered to take, or cause to be taken, such legal proceedings as it might deem proper. The suit was properly brought in the name of the committee under the agreement with the depositary. See Sitges v. St. Bernard Syndicate, 169 La. 674, 125 So. 850. The defendants are the above named drainage district, the Assessor of St. Bernard Parish, and the Sheriff and Ex-officio Tax Collector for said parish.
The bonds held by the Committee are part of an issue of $500,000. This suit was filed May 1, 1947, and by it relators by mandamus seek to compel the defendants to levy and impose upon each and every acre of land in the Drainage District for the years 1944 to 1950, both inclusive, a sixte'en-cént acreage tax, alleged to have been voted by the property taxpayers of the Drainage District at elections held on January 10, 1911 and August 26, 1912. Relators further seek to compel defendants to continue to levy and impose said tax after the year 1950, so that the proceeds and avails of the tax collections, after the deduction of authorized expenses, may be deposited as required by law and made available for payment upon the outstanding bonds, until the bonds, with interest, have been paid in full.
Under the provisions of both Art.- 281 of the Constitution of 1898, as amended in 1908 and in 1910, and Act No. 256 of 1910, LSA-R.S. 39:501 et seq., 39:701 et seq., a special bond election was held on January 10, 1911, at which a' majority of the property taxpayers within the Bayou Terre-aux-Boeufs Drainage District voted :
“To authorize the levy and assessment of an annual contribution or *409 acreage tax of sixteen (160) cents per acre on every acre of land in the Bayou Terre-aux-Boeufs Drainage District, which levy shall begin with the year 1911 for Forty (40) years consecutively for the purpose of providing and maintaining an adequate drainage system for said district with accordance with the provisions of Article 281 of the Constitution of the State of Louisiana as amended and adopted in 1910.” (Italics ours.)
The bonds aggregating $500,000, which the sixteen-cent per acre tax was voted .to meet at the election of January, 10, 1911, were declared void and illegal by the Supreme Court for various reasons. See Board of Commissioners, etc. v. Randolph, 131 La. 244, 59 So. 198. Thereafter, on. August 26, 1912; prior to the issue of the bonds, some of which are held by relators, a second bond election was held whereat the property taxpayers voted on the following propositions: ■
“1st. — To authorize the Board of Commissioners of the Bayou Terre-aux-Boeufs, Drainage District to incur an indebtedness of Five hundred thousand ($500,000.00) Dollars, to be evidenced by five hundred (500) negotiable bonds, with interest bearing coupons attached of One thousand ■ ($1,-■000.00) dollars each, in conformity with the provisions of Article 281 of the Constitution and laws of this State, ■said bonds to be secured by and payable ■out of the annual contribution or acreage tax voted in this district at the election held on the 10th day of January, 1911, the said bonds to mature within Forty (40) Years after'their date and-to contain provisions for their prior redemption, at such times and in such amounts as the Board of Commissioners may, by resolution, determine, and said bonds to bear five (5%) per cent, per annum interest from their date, payable semi-annually on the first day of August and February of each year, commencing with the first day of February, 1913, and the proceeds of the sale of which bonds shall be devoted to the accomplishment of' drainage work .in.said district as in the opinion of said Board of Commissioners may be most desirable.
■ “2nd, — To vote to confirm and approve the imposition and levy of an annual contribution or acreage tax of sixteen (16^) cents per acre voted at the election held in this district on the 10th day of January, 1911, the said tax to run for a period not longer than forty (40) years from the date of its imposition, and the said tax to be funded into bonds in accordance with law.”
(Italics ours.)
This second election carried.
Relators allege that notwithstanding that the qualified taxpayers had voted for the imposition of a sixteen-cent annual acreage tax for a full period of forty years, beginning with the year 1911 (and through 1950), respondents have failed to levy and collect the tax since 1943.
The present relators instituted three suits involving the bonds which they hold.
In' the first suit instituted February 27, 1942, bearing docket No. 2642 of the lower court, relators as a bondholders’ committee, representing holders of bonds not only of the $500,000 issue, but of two other issues as well, sought an injunction against the Bayou Terre-aux-Boeufs Drainage District to restrain it and its officers from applying any portions of the acreage taxes securing the three respective bond issues to any other' purposes except for the payment of the bonds. A mandamus was also sought to compel the Drainage District and its officers to impute the taxes collected in 1941 and iri future years to the retiremént of the bonds. By judgment rendered July 28, 1942 the Drainage Board and its officers were restrained from applying the avail's of 'the acreage tax collections, with the exception of authorized expenses, to any other purpose save payment of the bonds. The judgment further commanded the Drainage , District and its officers, among other things, “to levy and have collected for the-year 1942 and for future years for which the same are voted the respective acreage taxes of 30, 6‡ and 160, * .* *.”
The second suit, filed April 19, 1945, was docketed under the No. 2892. The same *410 bondholders’ committee sought a judgment against Bayou Terre-aux-Boeufs Drainage District:
1st. For $244,000, and interest thereon;
2nd. Ordering the defendant Drainage Board to levy and have collected the sixteen-cent acreage tax beyond tn'e thirty-two years pledged for payment of the bonds to the fortieth year because, allegedly, the Drainage District taxpayers had voted authority for “said tax to run for a period not longer than forty years from the date of its imposition” contending that the judgment in the first suit had so decreed;
3rd. Ordering the defendant Drainage Board to continue to levy the sixteen-cent per acre drainage tax beyond the thirty-second year from 1944 to 1950, if the judgment in the first suit did not so decree;
4th. Ordering the defendant Drainage Board to continue to levy and have collected said sixteen-cent per acre drainage tax, after the fortieth year, or from 1951 and subsequent years, until all of said bonds have been paid in full, and until the judgment rendered in this suit for the full amount of the. unpaid bonds and interest should have been paid in full; .
5th. And, alternatively, if the defendant Drainage Board was not authorized to levy and have collected said sixteen-cent per acre tax after the thirty-second year or from and . after 1944, then the Drainage Board be ordered to levy and have collected for the years 1944 and each year thereafter, until the judgment rendered in this cause in favor of plaintiff had been satisfied; and that the proceeds of all said taxes be applied to the payment of interest and bonds as abov.e; and
6th. Ordering the Parish Tax1 Assessor and Táx Collector to assess and collect the sixteen-cent per acre Drain- . age District tax.
To the second suit the Drainage District filed exceptions on the grounds that there was a misjoinder of causes of action and improper cumulation thereof, and moved to dismiss ■ plaintiffs’ application for mandamus against''it. The court siistained the exceptions as against the prayer for writs of mandamus, and dismissed relators’ application therefor. The Bondholders Committee made no attempt to prove its claim against the Bayou Terre-aux-Boeufs Drainage District for the alleged $244,000 of unpaid bonds and interest, and the suit was finally dismissed for want of prosecution for five years on May 1, 1953.
The present suit now before us on appeal was filed May 1, 1947, and bears docket No. 3135. The petition is markedly similar to the petition in the second suit, except in the instant suit a judgment for mandamus only is sought against defendants to compel them to continue to levy and collect the annual sixteen-cent per acre drainage tax from the year 1943 until such time as all of the alleged defaulted bonds with interest have been paid. No judgment establishing the amount of principal and interest due on the bonds as a legal indebtedness of defendant Drainage District is sought.
After the return date of the alternative writ of mandamus had been extended from time to time, the Bayou Terre-aux-Boeufs Drainage District prayed oyer of a certain contract, dated November 27, 1936, with which the bonds had been paraphed “Ne Varietur” for identification by Hunter C. Leake II, a notary public of Orleans Parish, which culminated in a copy of the contract in question being filed, a photostatic copy of which is included in the transcript.
After the contract of November 27, 1936 was so made a part of the record, the defendants excepted to relators’ petition on the grounds that there was an improper cumulation and misjoinder of actions and, further, that the petition disclosed no legal right or cause of action.
On December 15, 1947, Honorable Leo' W. McCune, who had been appointed to preside as judge of the Twenty-fifth Judicial District Court for the Parish of St. Bernard by the Supreme Court, pursuant to Art. VII, Sec. 12, Constitution'of 1921, heard arguments on the exceptions and overruled them on March 12, 1948.
*411 On October 11, 1948, Honorable Bruce Nunez, who had meanwhile been elected judge of the said court, in recusing himself from the case because of his having formerly been one of the attorneys of record for the . defendants, appointed Honorable Walter B. Hamlin, a judge of the Civil District Court for the Parish of Orleans, to try and adjudicate the matter.
' Judge Hamlin ordered a reargument of the exceptions filed by the defendants, and ■ultimately rendered a judgment.maintaining them and dismissed the suit, hence this appeal by relators.
The exception of misjoinder of action and mistaken remedy raises the question whether mandamus is the proper remedy in view of the state of the record.
A reference to the copy of one of the bonds filed with and made part of the petition reveals thereon the following:
“Ne Varietur for identification with an act of contract passed before me this 27th day of Nov. 1936.
“(Signed) Hunter C. Leake II,
Notary Public,
Orleans Parish, La.”
The contract- with which the bonds are identified by the foregoing paraph, as has been said before, forms part of the record. This instrument is most complex and consists, with attached exhibits, of more than fifty typewritten pages. The ■contract is by and between Biloxi Marsh Lands Corporation, which owns some 88,000 .acres of land situated in the Bayou Terre-aux-Boeufs Drainage District, on the one Rand, and relators and two other persons holding bonds of the Drainage District. The contract recites that the said lands, which the Biloxi Corporation acquired from the St. Bernard Syndicate, had been adjudicated to the State for nonpayment of taxes, including the nonpayment of the drainage acreage taxes, and the Syndicate redeemed, under the provisions of Act No. 161 of 1934, the greater portion thereof, the title to which was vested in the Syndicate at the time of the adjudication, the validity of which redemption was questioned by the Committee (relators here) and as a result of the controversy arising concerning said redemptions, the Committee (relators) instituted a certain suit in the Twenty-fifth Judicial District Court against the Registrar of the State Land Office and others. It is also set forth in the contract that as a result of the, controversy, .an action was instituted in said district court by St. Bernard Syndicate against “Percy H. Sitges et al.” wherein a judgment of $55,250 was sought.
In consideration of the mutual obligations assumed by the respective parties, the Committee (relators) agreed to dismiss, with prejudice, its suit, which was then pending in the Supreme Court, and waived its claim with respect to any drainage taxes, interest, costs, or penalties, which the Committee (relators) as owners or holders of the bonds has or may have with respect to the 88,000 acres of land, fro.m and including the first year or years, respectively, following the year or years, respectively, for which said lands were adjudicated to the State for taxes, up to and including the year in which the lands were redeemed from the tax sale. The two other bondholders who were parties to the contract made similar waiver of such drainage taxes.
■ The instrument further set forth that the bondholders contemplated entering into a bond refunding agreement with the Bayou Terre-aux-Boeufs Drainage District according to a formal agreement attached to the contract as Exhibit “A”. It was further recited that no failure by any intended party to such contemplated refunding agreement to sign, or any failure of accomplishment of any of the objects or.purposes of said proposed agreement, would avoid or in any way alter the binding force or effect of the contract, nor would anything contained in said purported agreement, if 'signed, have the effect or be construed as modifying any of the respective-rights and obligations of the Biloxi Corporation and the bondholders under the contract.
As a further consideration the Committee (relators) loaned to the Biloxi Corporation the sum of $18,000, and accepted from the Biloxi Corporation a note for said sum secured by first mortgage on the lands. As *412 a further consideration the Biloxi Corporation executed and delivered to the bondholders its non-interest bearing promissory-note in the principal sum of $250,000 secured by a second mortgage on the lands.
The Biloxi Corporation also executed in favor of the bondholders a certain agreement in the nature of a conveyance and assignment of an undivided one-half interest in and to all of the oil, gas, and other minerals in and under and which may be produced from certain described lands. This mineral assignment was placed in escrow, and it was provided that the same would not be effectual except upon certain enumerated conditions being fulfilled.
The contract contains numerous other complicated clauses and conditions, which we deem unnecessary to set forth or dwell upon in this opinion.
A study of the petition, with the exhibits included in the record, that is, the above contract and the copy of the bond containing the notary’s paraph identifying the bonds with the contract, together with the records in the first and second suits, shows that not only is there a serious controversy as to whether the sixteen-cent per acre fax expired in 1943 after having been'levied and collected for thirty-two years, but a serious controversy grows out of the contract as to whether the full amount, or a portion, of the bonds has been paid by receipt of sufficient consideration under the contract executed, to-wit: a mortgage of $250,000 against the 87,598.63 acres of land in the Drainage District and a one-half interest in whatever minerals may be produced by the lands.. The amount or value of said mortgage and mineral interest accepted by the bondholders in substitution of the mortgagor’s tax obligations under the bonds might well have exceeded the amount of the bonds and .interest, thereby extinguishing whatever obligations there were on the bonds.
It seems to us that all these matters should have been settled by the relators and the Bayou Terre-aux-Boeufs Drainage District in the second suit, which was ultimately dismissed for lack of- prosecution, before the summary process of mandamus should be invoked to compel the assessment and collection of the sixteen-cent per acre drainage-tax from and after the year 1943, assuming that such tax could legally be levied and collected after that year. Plaintiffs appeal to this court to have a mandamus issued for the accomplishment of that purpose without judgment first being rendered on the controversial claim whether there is a legal debt, and if so the establishment of .the amount due, if any, on the bonds.
Mandamus is an order issued in the name of the State by a tribunal of competent jurisdiction and addressed to an individual or corporation, or a court of inferior jurisdiction directing it to perform some certain act belonging to the place, duty, or quality with which it is clothed. C.P. art. 829. Mandamus should be issued in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever. C.P. art. 830.
In State ex rel. People’s State Bank v. Police Jury of Red River Parish, 154 La. 389, 97 So. 584, 587, the Supreme Court said:
“The writ of mandamus issues to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. Am. & Eng. Ency. vol. 19, p. 723.
“The purpose of the writ is to enforce a clearly recognized right and to compel the performance of a ministerial duty with respect to that right. State ex rel. St. Martin v. Police Jury of Parish of St. Charles, 29 La.Ann. 146; State ex rel. Fix v. Herron, 29 La.Ann. 848; State ex rel. Ames v. Judge of Second District Court, 32 La.Ann. 1306.
“Mandamus will lie to compel the performance of duties purely ministerial in their nature, and where they are so clear and specific that no element of discretion is left in their performance. State ex rel. Gaynor v. Young, 38 La.Ann. 923; State ex rel. Daboval v. Police Jury of St. Bernard, 39 La.Ann. 759, 2 So. 305; State ex rel. Luminais v. Judges of the Civil District Court for the Parish of Orleans, 34 La.Ann. 1114; State ex rel. Longstreet v. *413 Johnson, 28 La.Ann. 932; State ex rel. Beebe v. Judge of Sixth District Court, Parish of Orleans, 28 La.Ann. 905, 26 Am. Rep. 115.”
In State ex rel. Texarkana, S. & N. Ry. Co. v. Smith, 104 La. 370, 29 So. 40, as expressed in the syllabus, it was said:
“A writ of mandamus will not lie unless the action desired is of absolute obligation on the part of the person sought to be coerced, and the relator must show not only a clear legal right to have the thing done, but to have it done in the manner and form in which he desires the respondent to perform it.”
As counsel for the relators point out, there are several cases decided by the Supreme Court wherein holders of bonds were held entitled to invoke the remedy of mandamus to compel public officers to proceed in the performance of their ministerial duties in collecting and applying to the bonds special taxes as required by law. Moore v. City of New Orleans, 32 La.Ann. 726; Sun Mutual Insurance Co. v. I. W. Patton, 32 La.Ann. 1306; State ex rel. F. H. Florance v. A. H. Isaacson, 32 La. Ann. 1306; State ex rel. De Leon v. City of New Orleans, 34 La.Ann. 477. However, it cannot escape notice that in none of those cases was there before the court such a serious controversy and collateral issues as exist here as to the amount due on the bonded indebtedness.
We do not think that the process of mandamus will lie where it is necessary to try and decide involved questions of fact or where there are collateral questions which should be settled by prior adjudication. Before the writ could issue in this case, an interpretation of a voluminous and complicated contract between relators and persons not parties to the litigation is necessary, and in addition to that issue, an accounting between the bondholders and the Biloxi Corporation would be necessary before it could be determined the amount of the indebtedness, if any, of the Bayou Ter-re-aux-Boeufs Drainage District. It is quite clear that no intelligible decision could be made without the aid of -facts about which the Bayou Terre-aux-Boeufs Drainage District knows nothing, nor obtainable -by proofs consistent with a mandamus proceeding. In view of the existence of the contract of November 27, 1936, the duties sought to be coerced can no longer be said to be purely ministerial.
Such issues as the court would be called upon to try cannot properly be engrafted in a mandamus proceeding. The exception of misjoinder of action and mistaken remedy is valid and was properly maintained below.
We think also that the exception of no cause of action is valid.
Counsel for the relators adopt the position that the sixteen-cent annual acreage tax was voted by the property taxpayers for the period of forty years. At this point it is in order to mention that the bonds contain a paragraph which in substance sets forth that they were issued pursuant to the constitution and laws and ordinances passed by the. board, which ordinances provided for the levying,of a tax of sixteen cents per acre each year for thirty-two consecutive years, or as much thereof as may be necessary, beginning with the year 1912. The maturity date of the bonds as therein set forth is February 1, 1944, or thirty-two years after their issuance.
The taxpayers did not vote for a levy of the special tax of sixteen cents per acre for forty years. Under the election of January 10, 1911, levy was to begin with the year 1911 and continue for forty years consecutively, but in the second election held on August 26, 1912, under which the bonds held by relators were issued, the property taxpayers voted that bonds of the $500,000 issue were to mature within forty years after their date. The vote' in favor of a tax levy of sixteen cents per acre, which was the subject matter of the second proposition in the August 1912 election, was that the said tax is to run for a period not longer than forty years from the date of its imposition.
In the wisdom and discretion of the Drainage Board thirty-two-year bonds were issued and the special annual tax voted to meet their payment was fixed for a period of thirty-two years.
*414 It is plain to see, therefore; that neither the Drainage District nor the taxing authorities were authorized to have the special sixteen-cent per acre tax collected for a period longer than thirty-two years, and because of this fact our opinion is that there exists no ministerial duty on the respondents to have said tax levied and collected beyond the year 1943.
Relators also contend that the judgment of July 28, 1942, which ordered.respondent Drainage District to levy and have collected the special sixteen-cent acreage tax “for the year 1942 and for future years for which the same are voted,” constitutes res judicata and hinds effectively the Drainage Board to have the tax continued beyond 1943. Our interpretation of the judgment is that it merely ordered the Drainage Board to levy and collect the special tax for the years 1942 and 1943 because the Drainage Board concluded in passing the ordinance which authorized the bonds that the tax should be collected only through the year 1943, in which year the bonds of the $500,000 issue matured. We cannot believe that the then'presiding judge had in mind the extension of the levy and collection of the tax beyond the thirty-two-year period.
Therefore, for the reasons assigned, the judgment appealed from is affirmed.
Affirmed.